UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

APRIL GARCIA,

     Plaintiff,

v.                                                  Case No.:  2:19-cv-877-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

Plaintiff April Garcia filed a Complaint on December 12, 2019.  (Doc. 1).

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social

Security Administration ("SSA") denying her claim for a period of disability and

disability insurance benefits.  The Commissioner filed the transcript of the

administrative proceedings (hereinafter referred to as "Tr." followed by the

appropriate page number), and the parties filed a joint memorandum detailing their

respective positions.  (Doc. 22).  For the reasons set forth herein, the decision of the

Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42

U.S.C. § 405(g).

## I.      Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment that can be

expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.    Procedural History

Plaintiff filed a claim for a period of disability and disability insurance benefits on March 13, 2017.[1]  (Tr. at 15).  Plaintiff alleged a disability onset date of October 17, 2016.  (*Id.*).  Plaintiff's claim was denied at the initial level and upon reconsideration.  (*Id.*).  Plaintiff requested an administrative hearing, held on September 20, 2018, before Administrative Law Judge ("ALJ") Ryan Johannes.  (*Id.* at 15, 35).  The ALJ issued an unfavorable decision on January 31, 2019.  (*Id.* at 15-26).  On October 28, 2019, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-3).  Plaintiff then filed her Complaint with this Court on December 12, 2019, (Doc. 1), and the parties consented to proceed before a United States Magistrate Judge for all purposes, (Docs. 13, 16).  The matter is, therefore, ripe.

---

[1] The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations, however, do not apply in Plaintiff's case because Plaintiff filed her claim before March 27, 2017.

III.      **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022.  (Tr. at 17).  At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since October 17, 2016, the amended alleged onset date (20 [C.F.R. §] 404.1571 *et seq.*)."  (*Id.*).  The ALJ, at step two, found that Plaintiff has the following severe impairments:  "small fiber neuropathy, myoclonic seizures and jerks, foot pain, a generalized anxiety disorder, a major depressive disorder, and marijuana abuse disorder (20 [C.F.R. §] 404.1520(c))."  (*Id.*).  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525, and 404.1526)."  (*Id.*).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC"):

> [T]o perform light work as defined in 20 [C.F.R. §] 404.1567(b) except she can occasionally climb stairs and ramps and never climb ladders and scaffolds.  She can occasionally balance, never crawl, occasionally operate foot controls, occasionally reach above the head and frequently handle and finger.  She should avoid concentrated exposure to extreme cold and heat and vibrations, and all exposure to moving mechanical parts and unprotected heights.  The claimant is limited to understanding, remembering and carrying out simple repetitive tasks, in a routine work setting that has only occasional changes in the work routine, and no fast-paced work.

(*Id.* at 20).  The ALJ also determined that Plaintiff "is unable to perform any past relevant work (20 [C.F.R. §] 404.1565)."  (*Id.* at 24).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (20 [C.F.R. §§] 404.1569, 404.1569(a))."  (*Id.* at 25).  The ALJ, relying on Vocational Expert ("VE") testimony, found that Plaintiff could perform the following jobs that exist in significant numbers in the national economy:  Cleaner (DOT# 323.687-014); Marker (DOT# 209.587-034); and Sorter (DOT# 222.687-022).  (*Id.*).  For these reasons, the ALJ held that Plaintiff "has not been under a disability, as defined in the Social Security Act, from

October 17, 2016, through the date of this decision (20 [C.F.R. §] 404.1520(g))." (*Id.* at 26).

## IV. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*,

979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

**V.      Analysis**

On appeal, Plaintiff raises five issues.  As stated by the parties, the issues are:

1.      Whether the ALJ Properly Considered the Findings in the Credited Opinion of Drs. Buré-Reyes and Levin;

2.      Whether the ALJ Properly Relied on the Opinion of Dr. Nuss;

3.      Whether the ALJ's Evaluation and Rejection of Plaintiff's Alleged Symptoms and Limitations is in Accordance with Applicable Law and Supported by Substantial Evidence;

4.      Whether the ALJ Properly Accorded "Little Weight" to the FCE; and

5.      Whether the ALJ Properly Considered the Findings of Ophthalmologists Dr. Aouchiche and Dr. Geller.

(Doc. 22 at 33-34).  The Court addresses each issue separately below by first summarizing the parties' arguments, then reciting the applicable legal standards, before addressing the ALJ's opinion.

**A.      Whether the ALJ Properly Considered the Findings in the Credited Opinions of Dr. Buré-Reyes and Dr. Levin.**

First, Plaintiff argues that the ALJ failed to consider properly Dr. Buré-Reyes' and Dr. Levin's findings even though he afforded their opinions "considerable weight."  (Doc. 22 at 34 (citing Tr. at 23-24)).  Specifically, Plaintiff asserts that the ALJ failed to include RFC limitations to account for both the mental functional impairments and the visual processing and motor skills impairments identified by Dr. Buré-Reyes and Dr. Levin.  (*Id.* at 35 (citing Tr. at 20, 543)).

Plaintiff claims that the ALJ's error is not harmless because: (1) the VE's testimony was not based on an RFC determination with limitations reflecting Dr. Buré-Reyes' and Dr. Levin's opinions, (*id.* at 35 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002))); (2) the VE testified that "the inability to sustain at least occasional near visual acuity or frequent use of the hands would eliminate all the jobs . . . cited," (*id.* at 36); and (3) had the ALJ "properly considered" Dr. Buré-Reyes' and Dr. Levin's opinions, he would have found that Plaintiff's mental impairments meet Listing 12.07, (*id.* at 35-36 (citing 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.07; Tr. at 543, 270, 286, 340, 352, 373, 385, 417, 420, 428, 432, 437, 542, 604, 607, 625, 775, 779, 849, 859, 888)).

In response, the Commissioner asserts that the ALJ did not err because his RFC finding reasonably accounted for the limitations opined by Dr. Buré-Reyes and Dr. Levin. (*Id.* at 38). Moreover, the Commissioner argues that, even if the ALJ's assessment of Dr. Buré-Reyes' and Dr. Levin's opinions was insufficient, any error is harmless because the "Cleaner" position that the ALJ found Plaintiff can perform "does not require visual acuity and requires frequent use of the hands," (*id.* at 38, 44 (citing *Dictionary of Occupational Titles* (DOT) § 323.687-014, 1991 WL 672783)), and the ALJ need not include limitations that he determined were unsupported in his hypothetical questions to the VE, (*id.* at 43 (citing Tr. at 20, 25, 52-53)). In response to Plaintiff's citations to the record, which do not refer to Dr. Buré-Reyes' and Dr. Levin's opinions, the Commissioner asserts that it is not the task of the Court to reweigh the evidence or opine if the evidence could support an alternative result. (*Id.*

at 42 (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014))).

Finally, the Commissioner argues that Plaintiff failed to show her impairments meet

or equal Listing 12.07. (*Id.* at 46-47 (citing Tr. at 18-19, 193-97)).

An RFC is the most a claimant can still do despite the physical and mental

limitations of her impairments. *See* 20 C.F.R. § 416.945(a); *Phillips v. Barnhart*, 357

F.3d 1232, 1238 (11th Cir. 2004). The ALJ is responsible for determining the

claimant's RFC, and he must consider the claimant's ability to "meet the physical,

mental, sensory, and other requirements of work." 20 C.F.R. § 416.946(c). The ALJ

must consider all the claimant's medically determinable impairments, even those not

designated as severe. 20 C.F.R. § 416.945(a)(2).

The Social Security regulations define medical opinions as statements from

physicians, psychologists, or other acceptable medical sources that reflect judgments

about the nature and severity of impairments, including symptoms, diagnosis, and

prognosis, what a claimant can still do despite impairments, and physical or mental

restrictions. 20 C.F.R. § 404.1527(a)(2). While an ALJ must give a treating

physician special deference, there is no such requirement for non-treating sources.

*Barnhart*, 357 F.3d at 1240-41. Instead, the ALJ's RFC determination must merely

be supported by substantial evidence. 42 U.S.C. § 405(g). Additionally, an "ALJ

may reject any medical opinion if the evidence supports a contrary finding." *Lacina*

*v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz*

*v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

Finally, an incorrect application of the regulations will result in a harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *see also Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991) (holding that remand is not warranted unless an error shows "unfairness" or "clear prejudice").

The Court finds that the ALJ appropriately considered Dr. Buré-Reyes' and Dr. Levin's opinions.

To begin, the Court notes that when the ALJ summarized Dr. Buré-Reyes' and Dr. Levin's opinions, he specifically noted that they found Plaintiff's "mental-set shifting was impaired, and her self-report inventory of depression was indicative of severe depression." (*See* Tr. at 22 (citing Tr. at 543)). Additionally, the ALJ emphasized Dr. Buré-Reyes' and Dr. Levin's findings that Plaintiff exhibits "emotional problems likely the result of traumatic events and undertreated psychiatric symptoms directly stemming from psychological trauma[, however, Plaintiff's] longstanding use of benzodiazepines and marijuana was likely a way of coping through self-medication, and her cognitive and emotional wellbeing will improve with appropriate treatment." (*Id.* (citing Tr. at 543-544)). The ALJ also noted that Dr. Buré-Reyes and Dr. Levin found that Plaintiff had "tremors in her hands, head and mouth" and that she "alleged seeing black spots, figures and images before falling asleep." (*Id.* at 21 (citing Tr. at 542)).

With this summary in mind, the Court is unpersuaded by Plaintiff's argument that the ALJ failed to consider Dr. Buré-Reyes' and Dr. Levin's findings in Plaintiff's mental limitations. The ALJ clearly assessed their opinions to the extent that they acknowledge "untreated psychiatric symptoms" that "will improve with appropriate treatment." (*See id.* (citing Tr. at 543)). The ALJ limited Plaintiff to "understanding, remembering and carrying out simple repetitive tasks, in a routine work setting that has only occasional changes in the work routine, and no fast-paced work." (*Id.* at 20). By finding that Plaintiff could no longer engage in semiskilled work, which is evident from the ALJ's finding that Plaintiff can no longer engage in her past relevant work as an administrative clerk, Specific Vocational Preparation ("SVP") 4, the ALJ clearly imposed limitations on Plaintiff's mental RFC consistent with Dr. Buré-Reyes' and Dr. Levin's findings and supported by substantial evidence. (*Id.* at 20, 24, 543).

To the extent that Plaintiff seeks additional limitations, the Court notes that it will not reweigh the evidence. Rather, the Court affirms the ALJ's findings because they are supported by substantial evidence. *See Edwards*, 937 F.2d at 584 n.3. Plaintiff claims that Dr. Buré-Reyes and Dr. Levin found that she suffers from a somatic disorder, however, this is a misstatement of Dr. Buré-Reyes' and Dr. Levin's opinions. Their impressions actually state that:

> [Plaintiff] also endorsed elevated scores on a symptom validity scale, which is indicative of over reporting somatic and cognitive symptoms. Elevated scores were observed in several clinical scales, with the most notable [scores] in scales associated with the development and manifestation

10

> of physical symptoms under stress as well as depression. This response pattern together with the observed elevation in the symptom validity scale is prominent in individuals who seek medical attention, however their physical symptoms are likely to be related to emotional disturbances. Ms. Garcia's profile is indicative of a tendency to develop and manifest physical symptoms as expression of emotional distress.

(Tr. at 543). Plaintiff's claim that these impressions are equivalent to "a finding of a somatic disorder" are unavailing. Rather, they tend to support the ALJ's interpretation of Dr. Buré-Reyes' and Dr. Levin's findings. Based on these representations, the Court finds that the ALJ sufficiently considered the mental limitations found in Dr. Buré-Reyes' and Dr. Levin's impressions.

The Court also finds that the ALJ sufficiently considered Dr. Buré-Reyes' and Dr. Levin's opinions to the extent that they analyzed Plaintiff's physical limitations. Dr. Buré-Reyes' and Dr. Levin's opinions state that "[Plaintiff] evidenced moderately impaired visuospatial judgement [sic], severely impaired graphomotor skills and constructional praxis and mildly impaired constructional abilities." (*Id.*). Additionally, they stated that Plaintiff "demonstrated severely impaired bilateral fine motor dexterity." (*Id.*). In contrast to these findings, however, as stated above, Dr. Buré-Reyes and Dr. Levin also found that Plaintiff "endorsed elevated scores on a symptom validity scale, which is indicative of over reporting somatic and cognitive symptoms." (*Id.*). Moreover, Dr. Buré-Reyes and Dr. Levin stated that Plaintiff "will improve with appropriate treatment." (*Id.*). Notably, Dr. Buré-Reyes' and Dr. Levin's opinions lack any specific findings about the nature of Plaintiff's physical

11

impairments, a diagnosis of the physical impairments, a prognosis, a statement on what Plaintiff can still do despite her physical impairments, or any suggestions on physical restrictions.  Thus, the Court finds that there is no evidence that the ALJ disregarded any of Dr. Buré-Reyes' and Dr. Levin's findings and, in fact, properly considered them given that they contained contrasting findings of Plaintiff's physical restrictions.  *See Manes v. Comm'r of Soc. Sec.*, No. 8:16-cv-3234-T-36JBT, 2018 WL 1832330, at *11 (M.D. Fla. Mar. 28, 2018) (finding that an ALJ did not err when he failed to discuss medical records that did not discuss diagnoses, prognoses, restrictions or abilities).

The Court, therefore, finds that the ALJ sufficiently considered Dr. Buré-Reyes' and Dr. Levin's findings where the ALJ specifically summarized the findings and issued an RFC consistent with them.  Dr. Buré-Reyes' and Dr. Levin's findings did not recommend any specific limitations, as such, the ALJ exercised his discretion to interpret the findings and impose acceptable RFC limitations.  The Court declines to reweigh the evidence when, as here, substantial evidence supports the Commissioner's findings.  *See Edwards*, 937 F.2d at 584 n.3; *see also* 42 U.S.C. § 405(g).

**B.     Whether the ALJ Properly Relied on the Opinion of Dr. Nuss.**

Second, Plaintiff argues that the ALJ erred by affording "considerable weight" to the opinion of Dr. Nuss.  (Doc. 22 at 47 (citing Tr. at 20, 23)).  Plaintiff argues that affording Dr. Nuss' opinion considerable weight was an error because Dr. Nuss:  (1) was a non-examining source; (2) had a medical specialty irrelevant to Plaintiff's case;

12

and (3) gave his opinion before the record was complete.  (*Id.* (citing 20 C.F.R. § 404.1527(c)(1)-(5))).  Plaintiff specifically points to a portion of Dr. Nuss' opinion where he noted that "a biopsy was negative for small fiber neuropathy," which was later contradicted by Dr. Manier's finding of small fiber neuropathy in Plaintiff's thigh.  (*Id.* at 48 (citing Tr. at 67, 394, 769)).  Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence based on his reliance on Dr. Nuss' outdated opinion.  (*Id.* at 47-48).

In response, the Commissioner contends that substantial evidence supports the ALJ's decision to give considerable weight to Dr. Nuss' opinion.  (*See id.* at 49-50).  The Commissioner argues that "whether a physician has reviewed the entire record is only one of many factors an ALJ considers in determining the weight to give a physician's opinion."  (*Id.* at 49 (citing 20 C.F.R. § 404.1527(c))).  Additionally, the Commissioner contends that the ALJ was entitled to afford Dr. Nuss' opinion considerable weight, even though Dr. Nuss did not review the entire record, because the ALJ had access to the entire record when he made the ultimate determination.  (*Id.* at 50 (citing *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013); *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902-03 (11th Cir. 2012))).  In sum, the Commissioner argues that the ALJ did not err by giving considerable weight to Dr. Nuss' opinion because the ALJ reviewed all of the evidence of record and Dr. Nuss' opinion is supported by and consistent with the overall evidence of record.  (*Id.* at 50 (citations omitted)).

In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether an opinion is amply supported, whether an opinion is consistent with the record and the doctor's specialization. *See* 20 C.F.R. §§ 404.1527(c). Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion. 20 C.F.R. §§ 404.1527(c)(4). Usually, the opinions of treating physicians are given more weight than non-treating physicians, and the opinions of examining physicians are given more weight than non-examining physicians. *See* 20 C.F.R. §§ 404.1527(c)(1)-(2). A non-examining doctor's opinion that contradicts an examining doctor's medical report is accorded little weight and cannot, standing alone, constitute substantial evidence. *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir.1991). However, the ALJ may rely on a non-examining physician's opinion if it does not contradict the examining physician's medical findings or test results in the medical report. *See id.* at 585; *see also Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 740 (11th Cir. 2011).

Here, the Court finds that the ALJ did not err by giving considerable weight to Dr. Nuss' opinion where the ALJ explicitly found that the opinion is supported by the physical examination findings in the record, even though it was not based on the most recent evidence of record. (*See* Tr. at 23 (citing Tr. at 284-300, 301-13, 365-405, 767-83, 784-800, 880-98, 899-917)).

To begin, the Court is unpersuaded by Plaintiff's argument that Dr. Nuss' opinion is not entitled to considerable weight because he is "not of a relevant

specialty." (Doc. 22 at 47).  Plaintiff cites no case law to support the argument that a physician with a specialization cannot render an opinion that constitutes substantial evidence.  Rather, the pertinent regulations state that "[w]e generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(c)(5).  While Dr. Nuss' specialty is not relevant to Plaintiff's impairments, he is still a state agency medical consultant, highly qualified physician, and an expert in Social Security disability evaluations.  *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources).  The Court also notes that, even if 20 C.F.R. § 404.1527(c)(5) required the ALJ to afford a specialist's opinion less weight, that is only one of several factors that the ALJ must assess in completing his determination.  *See* 20 C.F.R. § 404.1527(c)(1)-(5).

Plaintiff's arguments that Dr. Nuss' opinion is not entitled to considerable weight because Dr. Nuss is a non-examining physician and because his opinion was rendered before the entire record was complete, are also unpersuasive.  The Eleventh Circuit has found that an ALJ may afford weight to a non-examining physician even when that non-examining physician was unable to review all the plaintiff's medical records before rendering an opinion.  *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013).  Here, the ALJ had access to the evidence added to the record after Dr. Nuss rendered his opinion and he cited that evidence when he afforded Dr.

Nuss' opinion considerable weight.  Moreover, the ALJ expressly noted that Dr. Nuss' opinion "was not based on the most recent evidence of record."  (Tr. at 23). The ALJ also considered the findings of Dr. Buré-Reyes and Dr. Levin and he considered Plaintiff's impairment resulting from the small fiber neuropathy present in her thigh.  (*See id.* at 17, 22, 23-24).  Thus, the Court is unpersuaded by Plaintiff's argument that the ALJ's reliance on Dr. Nuss' opinion is not supported by substantial evidence given that the ALJ explicitly accounted for and summarized the limitations and findings added to the record after Dr. Nuss' evaluation.

The ALJ's decision to afford considerable weight to the opinion of a non-examining physician who rendered an opinion before the record was complete is, therefore, supported by substantial evidence in the record when, as here, the ALJ considered the entire record.  *See Manes v. Comm'r of Soc. Sec.*, No. 8:16-CV-3234-T-36JBT, 2018 WL 1832330, at *9 (M.D. Fla. Mar. 28, 2018) (holding that the ALJ did not err by affording great weight to the opinion of a non-examining doctor who rendered her opinion before the record was complete).

### C.   Whether the ALJ's Subjective Symptom Evaluation Is Supported by Substantial Evidence.

Third, Plaintiff argues that the ALJ erred when he completed Plaintiff's subjective symptom evaluation because "evaluation of whether Plaintiff's statements are 'credible' constitutes a clear error of law."  (Doc. 22 at 50 (citing SSR 16-3p, 2016 WL 1119029)).  Plaintiff takes issues with the ALJ's statement that the record contains "evidence of exaggerated symptoms" and the ALJ's finding that Plaintiff's

"symptoms may not have been as serious as had been alleged." (*Id.* at 51 (citing Tr. at 21, 23)).  Moreover, Plaintiff argues that the evidence in the record does not support the contention that Plaintiff was exaggerating her symptoms. (*Id.* at 51-52 (citing Tr. at 394, 769, 595-600, 604-10, 863, 549, 885, 887, 543)).  Additionally, Plaintiff claims that the ALJ cannot rely on her activities of daily living as substantial evidence for the subjective symptom evaluation because they are relatively "mundane." (*Id.* at 53-54 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997)).  Finally, Plaintiff argues that the ALJ's rejection of Plaintiff's subjective symptom allegations is unsupported because she "pursued aggressive diagnostic evaluations and intervention when recommended" and her ability to perform personal care failed to demonstrate an ability to sustain competitive work activity. (*Id.* at 53-54 (citations omitted)).

The Commissioner argues that the ALJ properly evaluated Plaintiff's subjective complaints under the regulations and Eleventh Circuit case law. (*Id.* at 54-58).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test:  "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).  After an ALJ has considered a plaintiff's

complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).  If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citations omitted).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).[2]

The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are:  "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

---

[2]  Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p.  *See* SSR 16-3p, 2016 WL 1119029 (March 16, 2016).  SSR 16-3p explains that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term.  In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.*

The Court finds that the ALJ's subjective symptom evaluation is supported by substantial evidence and the ALJ did not err by using the phrase "not entirely credible." (Tr. at 21).

As an initial matter, Plaintiff argues that the ALJ violated SSR 16-3p when he allegedly found that "[Plaintiff] lacked credibility." (Doc. 22 at 50).[3] As stated above, SSR 16-3p supersedes SSR 96-7p and eliminates the use of the term "credibility" in the sub-regulatory policy. SSR 16-3p, 81 Fed. Reg. 14166, 14171. SSR 16-3p stressed that, when evaluating a claimant's symptoms, the adjudicator will "not assess an individual's overall character or truthfulness" but instead "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id.* SSR 16-3p clarifies that adjudicators will consider whether the "individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." *Id.* at 14170. With this legal standard in mind, it is clear that the ALJ's use

---

[3] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)). While Social Security Rulings are not binding on the Court, *id.*, they are nevertheless afforded "great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." *Id.* (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)).

of the phrase "not entirely credible" does not warrant remand. The ALJ's opinion, read in context, did not assess Plaintiff's "character or truthfulness," but rather, consistent with the two-step process for evaluating symptoms, it assessed Plaintiff's subjective complaints and found that they conflicted with the other evidence in the record. (*See* Tr. at 20-24 (citations omitted)); *see also* SSR 16-3p, 81 Fed. Reg. 14166, 14170-71; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 n.3 (11th Cir. 2018). The ALJ has a right to evaluate Plaintiff's subjective symptom allegations, as he did here, to determine whether the limiting effects of the symptoms "are consistent with" the record as a whole. *See id.*

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but her statements concerning intensity, persistence, and the limiting effects of those symptoms was not entirely consistent with the medical and other evidence of record for the reasons he stated in his decision. (Tr. at 20-21). The ALJ discussed Plaintiff's allegations of pain, weakness, and numbness, but contrasted this testimony with Plaintiff's imaging findings, generally mild objective findings from physical examinations, routine and conservative medical treatment, and activities of daily living such as Plaintiff's ability to perform personal care without assistance, prepare meals, and deal with money management and bill payment online. (*Id.* at 21). The ALJ also discussed in depth Plaintiff's medical records. (*Id.* at 21-24). After considering Plaintiff's subjective symptoms and the associated medical evidence, the

ALJ made a determination, supported by substantial evidence, that Plaintiff could perform light work activity consistent with the RFC finding.  (*Id.* at 21).

The Court is also unpersuaded by Plaintiff's reliance on *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), which states that participation in activities of short duration does not necessarily disqualify a claimant from disability.  While the Court recognizes that Plaintiff's activities of daily living are limited and the ALJ failed to explicitly articulate all the limitations, the ALJ is not prohibited from considering daily activities as one factor in the subjective symptom evaluation.  *See* 20 C.F.R. § 404.1529(c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).  The ALJ quoted the record when he stated that Plaintiff "[knows] how to manage money and pay bills online," (Tr. at 21, 23 (citing Tr. at 921-22)), "[performs] personal care without assistance," (*id.* (citing Tr. at 45, 192-99, 921-22)), washes dishes, (*id.* (citing Tr. at 44)), and prepares simple meals, (*id.* (citing Tr. at 192-99, 921)).  Nor did the ALJ rely on Plaintiff's activities of daily living as the sole support for his subjective symptom evaluation.  He also expressly considered Plaintiff's imaging findings, objective findings from physical examinations, and routine and conservative medical treatment.  (*Id.* at 21-23).

The Court is similarly unpersuaded by Plaintiff's argument that the ALJ erred by finding her medical treatment history routine and conservative.  (*See* Doc. 22 at 53).  Plaintiff cites multiple portions of the record that were expressly cited and considered by the ALJ.  (*See, e.g., id.* (citing Tr. at 366, 371-73, 475-76, 488, 769, 782, 845-51, 885)).  The Court finds that Plaintiff's citations to portions of the record

expressly considered by the ALJ are unpersuasive for arguing that the ALJ's credibility determination is unsupported by substantial evidence.  The subjective symptom evaluation is the province of the ALJ and this Court declines to disturb it in light of the substantial supporting evidence in the record cited by the ALJ.  *See Foote*, 67 F.3d at 1562.  Moreover, when the ALJ conducts the subjective symptom evaluation "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quotations omitted).  Here, upon reviewing the record, the Court finds that the ALJ considered Plaintiff's medical history treatment and appropriately considered it routine and conservative.  (*See* Tr. at 23).

In sum, the Court finds that the ALJ provided an in-depth analysis of Plaintiff's subjective symptoms and considered them thoroughly in the decision.  The ALJ considered Plaintiff's imaging findings, objective findings from physical examinations, routine and conservative medical treatment, activities of daily living, and the medical record as a whole.  The ALJ provided clearly articulated reasons supported by substantial evidence of record to reject Plaintiff's extreme allegations of pain.  Accordingly, the Court finds that the ALJ did not err in his subjective symptom determination and this determination is supported by substantial evidence.

### D.     Whether the ALJ Properly Accorded Little Weight to the FCE.

Fourth, Plaintiff argues that the ALJ erred in according "little weight" to physical therapist Rebecca Loiacano's Function Capacity Evaluation ("FCE"). (Doc. 22 at 58-60).  In support, Plaintiff notes that the FCE addressed Plaintiff's driving, stating that she is required to drive slowly, and Plaintiff's activities of daily living, which she can only perform intermittently with assistance.  (*Id.* at 59 (citing Tr. at 887-88)).  Additionally, Plaintiff argues that the FCE should not be rejected because its conclusions are supported by a summary of the testing performed on Plaintiff and of the medical records show clinical examination findings.  (*Id.* at 59-60 (citing Tr. at 270, 385, 409-11, 413, 417, 420, 428, 432, 437, 542, 604, 625, 751, 775, 779, 859, 860, 884, 885, 887-90)).  Plaintiff contends that the ALJ's reasons for affording "little weight" to the FCE were insufficient and unsupported by substantial evidence.

In response, Defendant contends that "the ALJ properly evaluated and weighed the [FCE] from one-time examiner and physical therapist, Rebecca Loiacano."  (*Id.* at 60 (citing Tr. at 24, 886-98)).  In support, Defendant argues that because PT Loiacano is a physical therapist, she is not an acceptable medical source under the regulations and the opinion is, therefore, not entitled to special weight. (*Id.* (citing 20 C.F.R. § 404.1527(f); *Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 783-85 (11th Cir. 2016)).  Additionally, Defendant contends that PT Loiacano "was a one-time examiner with no treating relationship with Plaintiff, which also limits the deference due her opinion."  (*Id.*).

Moreover, Defendant contends that PT Loiacano had no treating relationship with Plaintiff and that the report does not show that she reviewed Plaintiff's medical records.  (*Id.* at 61-62 (citing Tr. at 886-98)).  Accordingly, Defendant argues that the ALJ's decision to afford the opinion "little weight" is supported by substantial evidence.  (*Id.* at 62).  Specifically, Defendant notes that "Plaintiff's treatment record in 2016 shows generally unremarkable physical examination findings, including full muscle strength and intact sensation."  (*Id.* (citing Tr. at 286, 295, 369, 383-84, 392)).

Plaintiff specifically contends that the ALJ erred by affording only little weight to the FCE conducted by PT Loiacano.  (*Id.* at 58-60).

In evaluating this issue, the Court notes that the relevant Social Security regulations define "medical opinions" as "statements from physicians and psychologists or other *acceptable medical sources* that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2) (emphasis added).  "Acceptable medical sources" include professionals such as licensed physicians and licensed psychologists.  *Id.* § 404.1513(a).  Physical therapists are not acceptable medical sources.  *See* 20 C.F.R. § 404.1513(a).  Instead, they are considered an "other source."  *See id.* § 404.1513(d).

As an "other source," opinions from physical therapists are not considered "medical opinions" under the regulations.  *See* SSR 06-03p, 2006 WL 2329939, at *2. Further, under the regulations, only the opinions of acceptable medical sources may

be given controlling weight.  *See* 20 C.F.R. § 404.1527; *see also* SSR 06-03p, 2006 WL 2329939, at *2.  Moreover, "an ALJ is not required to accept the opinion of an individual who is not listed as an acceptable source of medical evidence."  *Berry v. Astrue*, No. 509-cv-328-OC-GRJ, 2010 WL 3701392, at *8 (M.D. Fla. Sept. 15, 2010) (citing SSR 06-03p; *Frantz v. Astrue*, 509 F.3d 1299 (10th Cir. 2007); 20 C.F.R. §§ 404.1513(d), 416.913(d)).

Under Agency guidelines, however, while information from other sources "cannot establish the existence of a medically determinable impairment," the information from other sources "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  SSR 06-03p, 2006 WL 2329939, at *2.  Indeed, while physical therapist's opinions are not entitled to any special consideration, this Court has stated that their opinions are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  *Berry*, 2010 WL 3701392, at *8 (citing SSR 06-03p; *Frantz*, 509 F.3d at 1299; 20 C.F.R. §§ 404.1513(d), 416.913(d)).

Against this backdrop, the Court finds that the ALJ properly considered PT Loiacano's opinion.  As a physical therapist, PT Loiacano is not an acceptable source, meaning that she cannot render a "medical opinion."  *See* 20 C.F.R. §§ 404.1513(a); 404.1527(a)(2).  Moreover, because PT Loiacano is a physical therapist, the evidence from PT Loiacano is not entitled to any special deference.  (*Id.*).  Further, because PT Loiacano is not an acceptable source of medical evidence, the

ALJ was not required to accept her opinion.  *See Berry*, 2010 WL 3701392, at *8 (citing SSR 06–03p; *Frantz*, 509 F.3d 1299 (10th Cir. 2007); 20 C.F.R. §§ 404.1513(d), 416.913(d)).  Yet, the Court finds that the ALJ properly considered the opinion "on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  *See id.*  The ALJ's finding that PT Loiacano's opinion is only entitled to "little weight" is supported by substantial evidence in the record as cited by the ALJ.  (*See* Tr. at 24 (citing Tr. at 192-99, 301-13, 325-64, 540-47, 767-83, 784-800, 844-51, 918-28)).

Notably, the ALJ determined that Plaintiff's subjective complaints conflicted with the record as a whole, a finding which this Court affirmed above.  (*Id.* at 21).  In so finding, the ALJ summarized the objective evidence and relevant medical history.  (*Id.* at 21-24).  Specifically, the ALJ summarized multiple imaging and diagnostic test findings from 2016 through late 2017 that were, on average, normal.  (*Id.* at 21 (citing Tr. at 366, 371, 373, 395, 399, 475, 477, 782, 799)).  The ALJ also found that Plaintiff's physical and mental status examinations were generally normal.  (*Id.* (citing Tr. at 284-86, 305, 325-27, 356-58, 368-69, 540-48, 769-75, 786-92, 849, 918-28)).  The ALJ thoroughly summarized and analyzed Plaintiff's medical history and his finding that she had generally normal physical and neurological examination findings, conservative treatment, and high functioning daily activities was supported by substantial evidence and sufficient for the ALJ to determine that PT Loiacano's opinion was entitled to "little weight."

Moreover, the ALJ specifically cited and considered a majority of the records that Plaintiff relies on to argue that the ALJ's decision is unsupported by substantial evidence and the Court notes that it will not reweigh the evidence.  Rather, the Court must affirm if substantial evidence supports the Commissioner's findings.  *See Edwards*, 937 F.2d at 584 n.3.  Additionally, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision' enables the district court 'to conclude that the ALJ considered [the claimant's] medical condition as a whole.'"  *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533 (11th Cir. 2014) (alteration in original) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Here, the ALJ specifically addressed the evidence in the record and, relying on his previous statements, rejected PT Loiacano's opinion because it was "not well supported by the generally normal physical and neurological examination findings from treating and examining sources, a lack of more than conservative treatment, and [Plaintiff's] high functioning activities of daily living."  (*See* Tr. at 24).  Because the ALJ stated with particularity the weight he gave to PT Loiacano's opinion, and the weight is supported by substantial evidence as shown by the ALJ's thorough summary of the record, the Court finds that remand is not appropriate.

### E.    Whether the ALJ Properly Considered the Findings of Ophthalmologists Dr. Aouchiche and Dr. Geller.

Finally, Plaintiff argues that the ALJ committed a harmful error by failing to discuss or assign weight to the opinions of treating ophthalmologist Dr. Aouchiche

and examining physician Dr. Geller.  (Doc. 22 at 63-65).  Plaintiff argues that the ALJ's failure to discuss either doctors' opinion or evidence constitutes a harmful error because the Court cannot determine whether the ALJ overlooked their opinions.  (*Id.* at 64-65 (citing *Bailey v. Comm'r of Soc. Sec.*, 802 F. App'x 462, 465 (11th Cir. 2020); *Coppola v. Colvin*, No. 12-cv-492-JL, 2014 WL 677138, at *5 (D.N.H. Feb. 21, 2014)).  Additionally, Plaintiff contends that this error was harmful because the vocational expert testified that the occupations he identified Plaintiff could perform all require "at least occasional near acuity."  (*Id.* at 65 (citing Tr. at 55)).

In response, the Commissioner argues that neither doctor's treatment notes constitute "medical opinions" that the ALJ was required to assign weight.  In support, the Commissioner asserts that neither set of treatment notes "reflect work-related limitations."  (*Id.* at 65-66 (citing 20 C.F.R. § 404.1527(a)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011))).  Finally, the Commissioner argues that, even if the doctors' notes constituted medical opinions that the ALJ was required to weigh, any failure to do so was harmless because the vocational expert identified the "cleaner" job that Plaintiff could perform, which "does not require visual acuity."  (*Id.* at 66-67 (citing DOT § 323.687-014, 1991 WL 672783; Tr. at 25, 53)).

In reviewing this issue, the Court notes that medical opinions are statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms,

diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions.  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

An ALJ is required to consider every medical opinion.  *Bennett v. Astrue*, No. 308-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).  Additionally, the Eleventh Circuit has stated that an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Winschel*, 631 F.3d at 1179.  Otherwise, the Court has no way to determine whether substantial evidence supports the ALJ's decision, and the Court will not affirm simply because some rationale might have supported the ALJ's conclusion.  *See id.*

Nonetheless, an ALJ is not rigidly required "to refer to every piece of evidence" in rendering a decision, as long as the ALJ's decision "is not a broad rejection" that is insufficient to enable to Court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Dyer*, 395 F.3d at 1211.  Moreover, the Court notes that an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings.  *Denomme*, 518 F. App'x at 877-78 (citing *Diorio*, 721 F.2d at 728).  In those situations, the ALJ's decision will stand.  *Id.*

Dr. Aouchiche examined Plaintiff twice in early 2017, and once on October 6, 2017.  (*See* Tr. at 406-13, 750-51).  Dr. Aouchiche found that Plaintiff's visual acuity was 20/40 in her left eye, Plaintiff complained of "droopy lul and blurred vision,"

and she assessed myoclonus pattern with nystagmoid motility, unspecified nystagmus, and other localized visual field defect, left eye.  (*Id.*).

Dr. Geller examined Plaintiff one time on October 15, 2018 and completed a Visual Evaluation Report that states "Seizure Disorder" under "Summary and Impressions" and "Neurological eval [sic]" under "Recommendations."  (*Id.* at 875-79).

The Court finds that neither set of treatment notes constitute formal opinions, and thus the ALJ was not required to assign them a weight or explicitly summarize them.  The Eleventh Circuit has held that treatment notes including a description of a claimant's symptoms, a diagnosis, and a judgment about the severity of her impairments, constitute a medical opinion that the ALJ must review.  *Winschel*, 631 F.3d at 1176.  In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), because the ALJ did not reference the treating physician's medical opinion, the Court could not determine whether his opinion was considered and rejected, or not considered at all.  *Id.*  The instant case is distinguishable for *Winschel*, however, because nothing in Dr. Aouchiche or Dr. Geller's treatment notes offer judgments about whether Plaintiff's impairments limit her ability to engage in work related activities.  (*See* Tr. at 406-13, 750-51, 875-79).

Even though Dr. Aouchiche diagnosed Plaintiff with myoclonus pattern with nystagmoid motility, unspecified nystagmus, and other localized visual field defect, left eye, she did not make any statements about the nature or severity of Plaintiff's impairments, such as a prognosis, restrictions, or her remaining abilities.  (*Id.*).

Although Dr. Aouchiche's reports recited symptoms, these were not opinions that discussed the nature or severity of her impairments, and did not discuss diagnoses, prognoses, restrictions, or abilities. For these reasons, Dr. Aouchiche's treatment notes do not constitute a medical opinion that the ALJ was required to summarize and assign a weight to. *See Alvarez v. Comm'r of Soc. Sec.*, No. 20-11721, 2021 WL 777143, at *2 (11th Cir. Mar. 1, 2021) (finding that the ALJ did not err by failing to assign a weight to the treatment notes of several doctors when their notes failed to show the claimant's functional limitations or ability to engage in work related activities).

Dr. Geller's findings, which are completely devoid of detail or analysis, have similar short comings. Dr. Geller's entire summary consists of two words: "Seizure Disorder." (Tr. at 875-79). His recommendation was also minimal: "Neurological eval [sic]." (*Id.*). Dr. Geller's record is clearly devoid of a discussion on the nature, severity, restrictions, or abilities associated with Plaintiff's impairments. Thus, the Court does not find that Dr. Geller's notes were a medical opinion that the ALJ needed to summarize and assign a weigh to. *See Alvarez*, 2021 WL 777143, at *2 (finding that the ALJ did not err by failing to assign a weight to the treatment notes of several doctors when their notes failed to show the claimant's functional limitations or ability to engage in work related activities).

The Court is also unpersuaded by Plaintiff's citations to *Bailey*, 802 F. App'x at 465 and *Coppola*, 2014 WL 677138, at *5. As an initial matter, the *Coppola* case was decided in the United States District Court for the District of New Hampshire,

and as such, is not binding.  Moreover, both cases are clearly distinguishable from the instant case given that they involve an ALJ's failure to afford weight the record of a physician that provided an opinion about the claimant's ability to work or engage in work related activity.  *See Bailey*, 802 F. App'x at 465 (11th Cir. 2020) ("Here, where the ALJ made no mention of Dr. Garewal's opinion that Bailey was unable to work and failed to specify the weight given to that opinion, we cannot determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."); *Coppola v. Colvin*, No. 12-cv-492-JL, 2014 WL 677138, at *5 (D.N.H. Feb. 21, 2014) (reversing the ALJ's decision where the ALJ failed to address the medical opinion of a doctor who concluded that the claimant was disabled and unable to do any form of work due to his impairments).

Accordingly, the ALJ did not commit a reversible error by failing to summarize or assign a weight to Dr. Aouchiche or Dr. Geller's treatment notes.  *See Alvarez*, 2021 WL 777143, at *2 (finding that the ALJ did not err by failing to assign a weight to the treatment notes of several doctors when their notes failed to show the claimant's functional limitations or ability to engage in work related activities).

The Court also finds that, even if the ALJ committed an error by failing to summarize Dr. Aouchiche or Dr. Geller's treatment notes, the error was harmless because the ALJ identified an occupation, as a Cleaner/Housekeeping, with sufficient numbers in the national economy that Plaintiff's RFC would allow her to complete without near or far visual acuity, depth perception, color vision, or field of vision.  *See* DOT § 323.687-014, 1991 WL 672783, ("Near Acuity:  Not Present –

Activity or condition does not exist . . . Far Acuity:  Not Present – Activity or condition does not exist."); (Tr. at 25).  Any error by the ALJ by would not contradict his ultimate findings, as such, his decision is not due to be remanded. *Denomme*, 518 F. App'x at 877-78 (citing *Diorio*, 721 F.2d at 728).

## VI.    Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court finds that substantial evidence supports the ALJ's decision.  Accordingly, the Court **ORDERS** that:

1.    The decision of the Commissioner is **AFFIRMED** Pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 18, 2021.

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties